Filed 12/17/13  In re K.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re K. G., a Person Coming Under the Juvenile Court Law. | C073324 |
| EL DORADO COUNTY DEPARTMENT OF HUMAN SERVICES, | (Super. Ct. No. PDP20100134) |
| Plaintiff and Respondent, | |
| v. | |
| G. G., | |
| Defendant and Appellant. | |

G. G., father of the minor, appeals from orders of the juvenile court summarily denying his petition for modification and terminating his parental rights.  (Welf. & Inst. Code, §§ 366.26, 388 [further undesignated statutory references are to the Welfare and Institutions Code].)  Father argues the court erred in denying his petition for modification as untimely.  Father also asserts the court erred in failing to find that he made a prima facie showing of both changed circumstances and that the proposed modification was in the minor's best interests.  Father claims that the summary denial of his petition for modification constituted a denial of due process.  Father also contends the juvenile court

1

abused its discretion in denying a bonding study and erred in failing to apply the beneficial relationship exception to avoid terminating his parental rights. We affirm.

**FACTS**

The El Dorado County Department of Human Services (Department) filed a petition in December 2010 alleging the mother failed to protect the three-year-old minor from risk of sexual abuse by father, who is a registered sex offender. The mother knew of father's conviction for sexually abusing the minor's half sibling but continued to reside with him. The minor was profoundly developmentally delayed and at high risk of abuse by father. The declaration for a protective custody warrant stated that the mother was a high-functioning client of Alta Regional. Mother told the social worker that when the minor was two years old, father told mother that he began molesting his daughter, the minor's half sibling, when the daughter was two years old. Mother sought help but did not leave father. The minor was placed in protective custody. The detention report included a statement from father's parole agent, whose caseload was primarily sex offenders, that sex offenders "can relapse at any time" and that the risk of doing so was always there. The juvenile court ordered the minor detained.

Following removal, the minor, who had shown extreme aggressive and resistive behaviors in the home, began to behave normally in foster care and was making some progress in overcoming her developmental delays. Prior to removal, and for a time thereafter, the minor would not interact with father and screamed if he tried to pick her up. She also withdrew from other adult males. The report stated father took no responsibility for his actions, denying his sexual abuse of the half sibling and her friend despite his conviction for both offenses. The mother told the social worker she heard father talking on the telephone telling someone he had molested the half sibling from the time she was two years old. Mother said the minor would not sleep in her own bed at home because father would sneak into bed with the minor and she would come out screaming. When she asked father why he woke the minor up, he said he was just

2

checking on her. The mother initially stated she had spoken to both the half sibling and father's former wife and was told details of the sexual abuse. Within a few weeks, mother admitted she had only spoken to the former wife, who did not want to be involved and refused to discuss the matter with her. The juvenile court sustained the petition in March 2011, stating it was not finding that father had or would sexually abuse the minor but that there was strong evidence the minor was at risk of such abuse. The court further found that mother's statements in the jurisdiction report were corroborated, but even if her statements were eliminated the petition would still be sustained.

The disposition report stated the minor was thriving in foster care and continued to make progress in speech and development. Her prior behavioral issues no longer existed. Father had engaged in voluntary services and was given information on resources for sex offender treatment. The Department recommended denial of services to father pursuant to section 361.5, subdivision (b)(12) due to his prior violent felony conviction and his continued denial of the prior sexual abuse of the half sibling and her friend. At the contested disposition hearing, the court denied services for father, finding he had not met his burden to show that reunification with him was in the minor's best interests. The court permitted limited therapeutic visits between father and the minor.

The review report filed in November 2011 stated father participated in therapeutic visits. The minor was distant at first but became more interactive with father over time. The mother told the social worker she needed closure with father and would like them both to realize their differences and work together for the minor's benefit. The mother further stated she would like father to remain a part of the minor's life because he is her father. An addendum report stated father continued to attend supervised visits with the minor twice a month. He interacted appropriately with the minor, and the visit supervisor had no concerns about the visits. At the review hearing, the court extended mother's services and continued visits for both parents.

The report for the next review hearing noted mother was not fully participating in services. Father continued to diligently attend his visits, bringing age-appropriate toys for the minor. Father focused on and engaged the minor, who appeared happy to see him. The report stated father was doing services on his own and wanted custody of the minor, but the social worker was concerned about his history of molesting the half sibling and her friend. Father had not provided verification of his participation in domestic violence classes or a sex offender program to the social worker. At the 18-month review hearing, the court terminated services and set a section 366.26 hearing.

The assessment for the section 366.26 hearing was filed in November 2012. The minor was in good health and doing well. She was diagnosed as intellectually disabled and continued to show developmental, cognitive, and speech delays, although her speech was improving. The minor had been in the same placement for nearly two years. Father's twice-monthly visits continued to be appropriate. The minor was considered to be adoptable and the social worker assessed that it was in her best interests to be adopted by the maternal grandmother, who had demonstrated she could care for the minor and meet her needs.

Father filed a petition for modification, three days before the scheduled section 366.26 hearing, seeking reunification services. Father alleged, as changed circumstances, that he had participated in services; admitted responsibility for his prior actions; and consistently attended visits, paying for his own supervisor when it became necessary to do so. He explained he previously denied responsibility for molesting the half sibling because he was afraid it would be used against him but had admitted to his therapist that he molested the half sibling and did express regret to her in 2005. Father also alleged that the minor now had some capability for verbal expression and no longer feared father or adult males. Father interpreted the mother's statements about wanting closure and having father remain a part of the minor's life as recanting all her prior allegations and as evidence she no longer thought the minor was at risk of sexual abuse

4

by father.  Father alleged he had shown changed circumstances and had disproven the allegations that led to denial of services at the disposition hearing.  He concluded the court should reevaluate the minor's best interests and grant the petition for modification.

Father attached various exhibits to the petition, including his psychological evaluation by Dr. Jeffrey Miller, a letter documenting his attendance at a domestic violence program, verification he completed a child abuse treatment program, and a letter from his therapist stating he participated in therapy that addressed sex offender treatment.  Father also included copies of e-mails between himself and the half sibling in 2005.

Father's petition relied in large part on Dr. Miller's evaluation, which concluded that because father's prior conviction for sexual abuse of a minor was based on an act of incest, he was at low risk to reoffend.  The report did acknowledge that father sexually abused both the half sibling and her friend and that he did manipulate them.  The report contained somewhat conflicting evidence concerning father's motivation for the crime, i.e., sexual fantasies about children and that he abused the 10-year-old girls due to lack of sex with his wife at the time he committed the offenses.  Further, while father apologized to the half sibling, there was nothing in the evaluation indicating father had remorse for molesting her friend.  Father told Dr. Miller that the court had determined at the disposition hearing that mother's allegations against him were false.  Dr. Miller indicated that while father continued to have some irrational explanations which prevented him from taking full responsibility for his behavior, this was not uncommon for individuals who were still in treatment.  After observing father with the minor at a visit, Dr. Miller concluded they had a close, affectionate, appropriate relationship.  The report concluded that if there was no credible evidence father had engaged in inappropriate sexual behavior with the minor and had demonstrated appropriate parenting in visits, there would be no concern for the minor's safety with him.  Father would not pose any significant risk to the minor, and it was highly unlikely father would engage in any inappropriate sexual behaviors with her if she were placed in his care.

The court continued the section 366.26 hearing and set a hearing on the appropriateness of the petition for modification, thereby allowing the parties time to respond to the petition. The responses argued the petition was untimely, did not show a change in circumstances, and had no evidence that the proposed change was in the minor's best interest.

In December 2012 the court denied the petition for modification as untimely in that father's late filing did not permit notice pursuant to the California Rules of Court and the opposition had strongly objected to the petition on that ground. The court also addressed whether father had demonstrated changed circumstances and whether the proposed change was in the best interests of the minor. The court found that much of the information in the psychologist's report was previously presented in the case and that the psychologist looked at the evidence and came up with a different opinion; thus, at least part of the report was not convincing. The court was also aware of the studies that concluded the risk of recidivism in incest cases was low but noted the criminal conviction in this case was not just an act of incest; it involved another minor, and the report did not discuss that aspect. The court was concerned about the father's admission of fault so late in the proceedings. The court noted that mother's belief of the minor's level of risk had changed several times, but her fear of the minor being molested was not the controlling factor because it was father's actions, not mother's belief, that placed the minor at risk, so changes in mother's beliefs did not constitute a change in circumstances as to father. The court discussed the minor's interaction with father, which currently appeared to be positive, noting that early in the case there was some evidence father was engaged in grooming the minor. Such behavior had not occurred in two years because the minor's time with father was in a controlled environment and the court could see that the minor would naturally develop some positive interaction and feelings for father. The court found that, at best, the evidence showed a pleasant relationship, not that father had, or could, assume a parental role. The court further found the statements that supported

6

father's showing of best interest were also not convincing, primarily because they were conclusory and not factual. The court found the petition did not make a prima facie showing of new evidence, of changed circumstances, or that either placement or services would be in the best interests of the minor.

The contested section 366.26 hearing commenced in January 2013. Dr. Miller testified that, based on the one visit he observed, the minor might suffer some detriment if she could no longer see father. However, since he did not do a bonding study, he was unable to determine whether the minor saw father as a parent or as a good friend. Father testified he had attended all 38 allowed visits, was never late, and all evaluations were positive. The court found father failed to meet his burden to establish an exception to the preference of adoption. The court terminated parental rights, selecting adoption as the minor's permanent plan.

## DISCUSSION

### I

Father contends the juvenile court erred in summarily denying his petition for modification. He argues the petition was not untimely as it was filed three days prior to the section 366.26 hearing, and the petition made a prima facie showing of changed circumstances or new evidence and that the proposed order was in the minor's best interests.

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[1]

---

[1] Section 388 provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).) The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ." (§ 388, subd. (d).)

"The parent requesting the change of order has the burden of establishing that the change is justified. [Citation.] The standard of proof is a preponderance of the evidence. [Citation.]" (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) Determination of a petition to modify is committed to the sound discretion of the juvenile court, and absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319 (*Stephanie M.*); *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The best interests of the child are of paramount consideration when the petition is brought after termination of reunification services. (*Stephanie M*., *supra*, 7 Cal.4th at p. 317.) In assessing the best interests of the child, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid.*; *In re Marilyn H*. (1993) 5 Cal.4th 295, 309.)

To establish the right to an evidentiary hearing, the petition must include facts which make a prima facie showing that there is a change in circumstances and that "the best interests of the child may be promoted by the proposed change of order." (*In re Daijah T*. (2000) 83 Cal.App.4th 666, 672-673; see *In re Zachary G*. (1999) 77 Cal.App.4th 799, 806; *In re Jeremy W*. (1992) 3 Cal.App.4th 1407, 1414; Cal. Rules of Court, rule 5.570(e)(1).) More than general conclusory allegations are required to make this showing even when the petition is liberally construed. (*In re Edward H*. (1996) 43 Cal.App.4th 584, 593.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence . . . would sustain a favorable decision on the petition." (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Jackson W*. (2010) 184 Cal.App.4th 247, 258.)

Assuming the timeliness of the petition was obviated by the court's continuance of the section 366.26 hearing and setting a hearing on the propriety of the petition, we need address only the questions of whether father established a prima facie showing of changed circumstances and best interests.

8

The allegations of the petition were drawn primarily from father's psychological evaluation and included both his self-serving statements to the psychologist and historical information previously presented in the case, and the psychologist's necessarily flawed conclusions based on both the statements and history. To the extent the psychologist drew different conclusions from this, the conclusions did not represent new evidence. (*In re H.S.* (2010) 188 Cal.App.4th 103, 105.)

Father's partial admission of responsibility for his actions coupled with an unconvincing explanation for his denials at the outset of the dependency lead to the reasonable inference that father was attempting to manipulate not only the outcome of the psychological evaluation, but the ruling on the petition for modification. The inference that he attempted this manipulation after participating in voluntary services designed to address this type of behavior as it related to his sex offender status indicates that father did not benefit from the services and has not made any fundamental changes. Father's relationship with the minor did improve over time, but, as the court noted, this was more likely the result of the highly structured settings of the visitations than of parent-child bonding.

Father asserts the allegations against him were disproved at the disposition hearing. The record does not support this claim. Mother never retracted her statements about what she observed in the home or what father told her. Her only retraction related to the conversations she said she had with father's former wife and the half sibling. Because father was convicted of the sexual abuse of the half sibling and her friend, mother's fabrication was irrelevant in establishing father's status as a registered sex offender stemming from the specific offenses of sexual abuse of two children. Mother's subsequent willingness to have father be a part of the minor's life at some level was nothing more than an expression of her desire to move forward with her life. It was not a disavowal of the facts that led to the filing of the petition. Father failed to establish that

9

circumstances had changed or that there was new evidence which justified a hearing on the petition.

Assuming arguendo that father adequately demonstrated changed circumstances, there was nothing in the petition establishing that the proposed order was in the minor's best interests. Instead, father asked the juvenile court to reevaluate what was in the minor's best interests at a full hearing. As we have said, it was father's burden to present a prima facie showing of best interests to be entitled to such a hearing. The petition alleged that the relationship between the minor and father during supervised visits had improved; the visits were positive and some of the minor's speech delays had improved. However, visits, while regular, were infrequent and father did not attempt to show the relationship was anything other than a positive, friendly relationship. These facts, taken separately or together, do not show why it was in the minor's interests to delay permanency so that father, who had been bypassed at disposition and had not benefitted from the voluntary services he had attended, could be offered court-ordered services in the hope that he could provide a safe, stable home for the minor.

Father failed to make a prima facie showing of either changed circumstances or best interests. The juvenile court did not abuse its discretion in summarily denying the petition for modification. Because father's showing was inadequate, he was not denied due process by the court's summary denial. (Cal. Rules of Court, rule 5.570(d).)

## II

Father contends the juvenile court abused its discretion in denying his request for a bonding study.

Prior to the section 366.26 hearing, father filed an application for a bonding study that would be relevant to both the petition for modification and establishing the beneficial relationship exception to termination of parental rights. The court took the question of the bonding study under submission and issued a written order denying the application. The court expressed concerns about the reliability of such a study, the potential bias of

the proposed examiner, and the delay in seeking the study.  The court concluded such a study would be of little value.

A bonding study, whether intersibling or parent-child, is not required prior to termination of parental rights.  (*In re Richard C*. (1998) 68 Cal.App.4th 1191, 1195; *In re Lorenzo C*. (1997) 54 Cal.App.4th 1330, 1339.)  The court has discretion to order a bonding study even late in the process.  (*Richard C*., at p. 1197.)  Absent a showing of clear abuse, the exercise of the court's discretion will not be overturned.  (*Stephanie M*., *supra*, 7 Cal.4th at pp. 318-319; *Lorenzo C*., *supra*, 54 Cal.App.4th at p. 1341.)

A bonding study is simply an expert opinion on the relationship between the parent and child.  The juvenile court is never required to appoint an expert when making a factual determination unless "it appears to the court . . . that expert evidence is . . . required." (Evid. Code, § 730.)  When there is ample evidence in the record of the relationship between parent and child, the juvenile court can properly conclude that a bonding study is unnecessary.

Here, the court had ample evidence of the changing relationship of father and the minor.  Given that the contact between them was limited to twice-monthly supervised visits during which there was little or no opportunity for father to be more than a playmate or friendly visitor to the minor, the court did not abuse its discretion in denying the request for a bonding study.

### III

Father argues the juvenile court erred in failing to apply the beneficial relationship exception to avoid terminating his parental rights.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. . . .' . . . If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A*. (1996)

11

44 Cal.App.4th 1352, 1368, citations omitted.)  There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child."  (§ 366.26, subd. (c)(1)(B).)  The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights.  (*In re Cristella C*. (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

Termination of parental rights may be detrimental to the minor when:  "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated."  (*In re Autumn H*. (1994) 27 Cal.App.4th, 567, 575.)  Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child.  (*In re Teneka W*. (1995) 37 Cal.App.4th 721, 728-729; *In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1418-1419; *In re Brian R*. (1991) 2 Cal.App.4th 904, 924.)

It is undisputed that father maintained regular twice monthly visitation once visits were ordered.  However, the question of benefit to the minor of continuing the relationship is less clear.  Because the minor's attitude and behavior toward father had changed over time from screaming avoidance to positive and even loving interaction, there is clearly some benefit to the minor in the relationship.

However, this minor has significant special needs that were not identified or met by either parent in the home. Father expressly stated that he left all parenting to mother. His only arguably parental contact with the minor was during his infrequent visits. The significant changes in her behaviors and mitigation of some of her delays were due, in large part, to being in a safe, stable, supportive foster home and a structured setting for visits where she could feel safe. Father's interaction with the minor, while positive, was not parental and did not rise to the level of a significant emotional attachment that, if severed, would greatly harm the minor. The only evidence of detriment was from Dr. Miller's testimony, and he was only able to say that the minor might suffer some detriment if the relationship was severed. The evidence of benefit from the relationship did not outweigh the benefit to the minor of a permanent adoptive home. Father failed to establish that the beneficial parent/child relationship exception applied and the court did not err in terminating parental rights.

## IV

Father argues the cumulative effect of the errors he has identified compels reversal. As we have found no error and thus no prejudice to father, reversal is not required.

## DISPOSITION

The orders of the juvenile court are affirmed.

                          RAYE          , P. J

We concur:


        MAURO        , J.


        DUARTE        , J.

13